UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| HAZYZION DORRIS, | ) | |
| | ) | |
| **Plaintiff,** | ) | Case  No. EDCV 14-0762 AJW |
| | ) | |
| v. | ) | **MEMORANDUM OF DECISION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| _____ | ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed an application for SSI benefits on March 21, 2011, alleging that he had been disabled since April 1, 2006 due to schizophrenia, paranoia, anxiety, panic attacks, and isolating behavior. [JS 2; Administrative Record ("AR") 21].  Plaintiff's applications were denied initially and upon reconsideration. [JS 2; AR 19; 149-153].  Plaintiff requested an administrative hearing, which was conducted before an Administrative Law Judge  (the "ALJ") on August 22, 2012.  [AR 19].  Plaintiff, who was represented by an attorney, testified on his own behalf during the hearing. [AR 19]. Testimony also was received from Troy

L. Scott, a vocational expert.  [AR 19].

On September 21, 2012, the ALJ issued a written decision denying plaintiff's application for benefits. [AR 1]. The ALJ found that plaintiff had a severe impairment, schizophrenia, but that it did not meet or equal an impairment included in the Listing of Impairments.  [AR 21-22].  See 20 C.F.R. Pt. 404, Subpt. P, App. 1.   The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but had nonexertional limitations restricting him to simple and repetitive tasks.  The ALJ found that plaintiff's RFC did not preclude performance of his past relevant work as a warehouse worker. [AR 23, 26].  Alternatively, based on the testimony of the vocational expert, the ALJ determined that plaintiff could perform alternative jobs that exist in significant numbers in the national economy. [AR 26].  The ALJ therefore concluded that plaintiff was not disabled at any time from March 21, 2011[1] through the date of his decision.  The Appeals Council denied plaintiff's request for review.  [JS 2].

**Background**

Plaintiff was born in 1986, and he was twenty six years old when the ALJ issued his  decision. [AR 35]. Plaintiff is single and lives with his mother and his cousin.  [AR 36].  He completed the eleventh grade. [AR 36].

The testimony and documentary evidence indicate that plaintiff has been treated for schizophrenia and symptoms of mental illness such as hallucinations, paranoia, sluggish thought process, anxiety, hostility, and aggressiveness.  [AR 262]. In August 2010, claimant was admitted to Atascadero State Hospital ("Atascadero") because he was found incompetent to stand trial on misdemeanor theft charges. [AR 147-248].  He also had a history of arrest for possession of marijuana.  [AR 247].  Plaintiff's admission records, which were based on an interview with plaintiff, a review of medical records, and a mental status examination, state that he had been psychiatrically hospitalized on three prior occasions, twice pursuant to California Welfare and Institutions Code section 5150, and that he had a diagnosis of schizophrenia. [AR

---

[1]     Although plaintiff alleges that he has been disabled since 2006, SSI benefits are payable no earlier than the month following the month in which the application was filed. See 20 C.F.R. §§ 416.330, 416.335.  Therefore, the relevant date for determining plaintiff's disability status was the date he filed his application for SSI benefits.

248].  The admissions records note that plaintiff's functional levels seemed to have deteriorated beginning in high school, and that his mother reported significant behavioral changes starting at age 19.  He was first hospitalized for "tripping out," and after his first release from Arrowhead Mental Health, he resisted taking his prescribed medication, Risperdal, because it made him sleepy and he felt he was being poisoned. [AR 248]. He suspected people of plotting against him and said that he did not trust anybody, including his family, because he thought they were trying to poison him. [AR 248].

Plaintiff reported having last heard voices about two weeks before his admission at Atascadero.  The admitting psychiatrist observed that plaintiff was sullen, and detached.  Plaintiff denied psychotic symptoms but appeared suspicious, scanning the room and repeatedly checking over his shoulder when seated with his back to the door. He also asked the doctor to repeat many questions. [AR 248]. His mental status examination revealed that he was withdrawn, mistrustful, spoke softly with sparse language, had a flat affect, appeared suspicious, and was distracted. [AR 251].   Plaintiff's admitting diagnoses were "schizophrenia, paranoid, chronic" and "cannabis abuse." [AR 251].  His Global Assessment of Functioning ("GAF") score on admission was 35, signifying some impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") Multiaxial Assessment, 27-36 (rev. 2000); see also Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014) (noting that "[a]though GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement.").

Plaintiff was treated at Atascadero from August 4, 2010 until his discharge on March 9, 2011. Plaintiff's discharge report states that while hospitalized at Atascadero, he was started on various medications, and his dosages were adjusted over time.  He started showing improvement in his symptoms in December 2010. [AR 262-263].  On December 23, 2010, plaintiff said that he found his medicine helpful. He denied complaints, concerns, or medication side effects; engaged readily in the interview and with clinical staff; and attended group activities. [AR 263].  On February 24, 2011, his treating clinicians concluded that plaintiff was competent to stand trial provided he was on psychotropic medication. [AR 263, 266-267].

At the time of his discharge in March 2011, plaintiff was compliant with his medications, stable, and was not exhibiting behavioral problems. His mental status examination was within normal limits except for his insight and judgment, which were "fair."   [AR 263, 266].  Plaintiff's discharge diagnoses were "schizophrenia, paranoid type" and "cannabis dependence." [AR 266].  His GAF score was 60, which, according to the DSM-IV, signifies  moderate symptoms or any moderate difficulty in social, occupational, or school functioning.   Plaintiff's was prescribed three "psychotropic medications," olanzapine[2], 40 milligrams daily; risperidone[3], 6 milligrams daily; and Celexa (citalopram)[4], 40 milligrams daily.  He also was prescribed vitamin D and acetaminophen as needed. [AR 266].  The doctor recommended that plaintiff continue to be seen by a physician and psychiatrist for medication, lab work, and follow-up treatment. [AR 266].  Plaintiff began outpatient follow-up treatment at Ontario Community Counseling in April 2011 and was seen regularly at that clinic through April 2012. [AR 292-304].

In May 2011, Dr. Khan, a nonexamining state agency physician, completed a mental residual functional capacity assessment. [AR 276].  Dr. Khan opined that plaintiff can work 40 hours a week, can

---

[2]    Olanzapine "is used to treat the symptoms of schizophrenia (a mental illness that causes disturbed or unusual thinking, loss of interest in life, and strong or inappropriate emotions) in adults and teenagers 13 years of age and older. . . . Olanzapine is in a class of medications called atypical antipsychotics. It works by changing the activity of certain natural substances in the brain." See U. S. Nat'l Library of Medicine and Nat'l Instit. of Health, MedlinePlus website, Olanzapine, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601213.html (last visited June 24, 2015).

[3]    Risperidone "is used to treat the symptoms of schizophrenia (a mental illness that causes disturbed or unusual thinking, loss of interest in life, and strong or inappropriate emotions) in adults and teenagers 13 years of age and older. . . . Risperidone is in a class of medications called atypical antipsychotics. It works by changing the activity of certain natural substances in the brain."  U.S. Nat'l Library of Medicine and Nat'l Instit. of Health, MedlinePlus website, Risperidone, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a694015.html (last visited June 24, 2015).

[4]    Celexa (a brand of citalopram) "is used to treat depression. Citalopram is in a class of antidepressants called selective serotonin reuptake inhibitors (SSRIs). It is thought to work by increasing the amount of serotonin, a natural substance in the brain that helps maintain mental balance."  U.S. Nat'l Library of Medicine and Nat'l Instit. of Health, MedlinePlus website, Citalopram, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a699001.html (last visited June 24, 2015).

4

relate to coworkers and supervisors, and can maintain pace and persistence, but that he must abstain from alcohol and drugs. [AR 276]. Dr. Khan noted that plaintiff can sustain simple one or two step repetitive tasks but would most likely have difficulty working with the general public, and thus recommended that plaintiff be limited to non-public work settings with limited public contact. [AR 288-289].

Plaintiff testified that he does not have difficulty with his personal needs like showering, and that he is able to help with household chores such as emptying the trash, washing dishes, doing laundry, grocery shopping, and carrying groceries into the house. [AR 36-37]. He also watches television and plays video games. [AR 36]. He said that he is able to sit for periods of 10 to 15 minutes, after which he gets "irritated" and either goes to the restroom or keeps getting up and moving. [AR 37]. He testified that he can stand for about 10 minutes, can walk about a mile, and can lift 100 pounds. [AR 37-38]. Plaintiff said that he has memory problems, gets easily distracted, and needed to be reminded to do his chores. [AR 42-43]. Plaintiff drank alcohol "about a couple days ago" and last smoked marijuana "[a]bout eight months ago." [AR 40].

Plaintiff testified that he started hearing voices and seeing things eleven years earlier, and that he has been taking Risperdal and Celexa for his symptoms. [AR 41]. He explained that he hears voices almost every day but that he could not remember what they said. [AR 40-41]. He also sees things (such as a bird that "disappears"), but not very often. [AR 42].

Plaintiff testified that worked as a barber for a year and a half but left that job because "all of a sudden" he "didn't want to work no more." [AR 39]. He also worked at a warehouse as a forklift driver. He said that job ended because he "didn't have transportation" to get to and from work. [AR 38-39].

Plaintiff's mother testified that plaintiff talked to himself while working and at home and would laugh loudly, distracting others. [AR 44]. She further stated that he must be reminded all the time to do his chores, that he can forget what he is doing in the middle of a task, and that she has to keep an eye on him because he sometimes blacks out. [AR 44-45].

During the hearing, the vocational expert testified that a hypothetical person with plaintiff's vocational profile whose RFC matched that found by the ALJ would be able to work as a warehouse worker but not as a forklift driver or barber as those jobs involve a higher skill level. [AR 46-47]. The vocational expert also testified that such a person could perform other unskilled jobs available in significant numbers in the national economy. [AR 47-48]. If, however, the person's mental impairments prevented him from

working a full eight-hour day and resulted in his being off task for 25 percent of the day, the vocational expert testified that the person would not be able to perform plaintiff's past work, and there would be no jobs available in the national economy that he could perform. [AR 48].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Statement of Disputed Issues**

The disputed issues are whether the ALJ properly considered the testimony of plaintiff and his mother and made proper credibility findings. [JS 3].

**Discussion**

**Lay witness testimony**

Plaintiff contends that the ALJ erred in rejecting the testimony by plaintiff's mother, Michelle Glenn, by failing to give reasons germane to her testimony. [JS 3, 10].

The ALJ wrote that Ms. Glenn testified that plaintiff "had trouble working because he talked to himself and distracted others. She reported the claimant needed reminders. Ms. Glenn alleged the claimant was easily agitated and would black out." [JS 3].

The ALJ found that Ms. Glenn's statements regarding the intensity, persistence and limiting effects of plaintiff's symptoms were less than fully credible. [AR 24]. The ALJ noted that Ms. Glenn is not a

medical professional, and that her opinion on issues such as the severity of plaintiff's symptoms is far less persuasive on those issues than the opinions of medical professionals. [AR 24]. Further, the ALJ concluded that Ms. Glenn was not unbiased because she had an emotional and financial interest in ensuring that plaintiff received benefits in order to increase the household income.  [AR 24]. Lastly, the ALJ stated that Ms. Glenn's statements are not supported by the clinical or diagnostic medical evidence. [AR 24].

While an ALJ must take into account lay witness testimony about a plaintiff's symptoms, the ALJ may discount that testimony by providing "reasons that are germane to each witness." Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).  Germane reasons for rejecting a lay witness's testimony include inconsistencies between that testimony and the medical evidence, inconsistencies between that testimony and the claimant's presentation to treating physicians during the period at issue, the claimant's failure to participate in prescribed treatment, and the possibility that the lay witness was "influenced by [a] desire to help" the claimant due to their "close relationship." Greger, 464 F.3d at 972; see Bayliss, 427 F.3d at 1218; Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Lay witness testimony can be competent evidence regarding the severity of a claimant's symptoms. See 20 C.F.R. §§ 404.1513(d), 416.913(d) (providing that lay witness testimony may be introduced "to show the severity of [plaintiff's] impairment(s) and how it affects [his] ability to work"); Dodrill, 12 F.3d at 918-919 ("[F]riends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify as to her condition."). The ALJ may not disregard such testimony solely because it is not evidence from a medical professional. See Bruce v. Astrue,  557 F.3d 1113, 1116 (9th Cir. 2009) (holding that although the claimant's wife was "not a vocational or medical expert, [she] was not disqualified from rendering an opinion as to how her husband's condition affects his ability to perform basic work activities").

Although the ALJ erred in rejecting Ms. Glenn's testimony as to plaintiff's limitations merely because Ms. Glenn is not a medical professional, any error was harmless because the ALJ articulated additional germane reasons for discrediting her testimony. See  Ludwig v. Astrue, 681 F.3d 1047, 1053-1055 (9th Cir. 2012) (holding that an ALJ's error was harmless where the claimant did not show a "substantial likelihood of prejudice" due to the error) (citing McLeod v. Astrue, 640 F.3d 881, 886-888 (9th

Cir. 2011)); <u>Molina</u>, 674 F.3d at 1121-1122 (holding that an ALJ's error in failing adequately to discuss lay testimony was harmless where it was "inconsequential to the ultimate nondisability determination"). First, the ALJ permissibly found Ms. Glenn's testimony less than fully credible because it was inconsistent with the medical evidence. [AR 24]. The ALJ found that there were no medical records regarding any of plaintiff's alleged physical limitations, and he rationally inferred that the absence of such records was inconsistent with the alleged severity of those limitations. [AR 24]. See <u>Bayliss</u>, 427 F.3d at 1218 (stating that an "[a]n ALJ need only give germane reasons for discrediting the testimony of lay witnesses" and that "[i]nconsistency with medical evidence is one such reason," and holding that the ALJ permissibly rejected lay testimony that was inconsistent with the medical evidence). Regarding plaintiff's alleged mental symptoms, the ALJ stated that plaintiff's discharge records from Atascadero and his post-discharge treatment records showed that plaintiff had improved with treatment, was stable on medication, and denied major problems. [AR 25]. The ALJ concluded that the medical evidence undermined the credibility of Ms. Glenn's testimony to the extent that she suggested that plaintiff's mental impairments render him totally unable to work. [AR 25].

Plaintiff acknowledges that the medical evidence shows that he "respond[ed] well to medication." [JS 9]. Citing an April 2011 treatment note, however, plaintiff contends that he continued to complain of auditory hallucinations, paranoia, and forgetting things easily, and that the ALJ unjustifiably relied on the medical evidence to discredit Ms. Glenn's testimony. [JS 9]. Plaintiff's treatment notes indicate that his condition during the first few months of outpatient treatment following his discharge from Atascadero was somewhat more volatile than it had been on discharge. Those notes also reveal, however, that plaintiff initially presented "need[ing] medications" because he had not established outpatient care, that he had two missed appointments in August 2011, and that his medication compliance on August 30, 2011 was "poor." [AR 298-310]. Beginning in September 2011, however, plaintiff consistently exhibited "good" medication compliance, and although his treating psychiatrist wrote that plaintiff needed ongoing treatment and still had some paranoia, plaintiff was observed to be "fairly stable" on his medications, denied major problems, and exhibited few other signs or symptoms of schizophrenia. [See AR 292-297]. Therefore, the ALJ permissibly relied on the medical evidence to reject Ms. Glenn's testimony to the extent it was inconsistent with an RFC for simple, repetitive tasks. See <u>Lewis</u>, 236 F.3d at 511 ("One reason for which an ALJ may

8

1  discount lay testimony is that it conflicts with medical evidence.").

2       Second, the ALJ noted that Ms. Glenn was not unbiased because she had an emotional and financial

3  interest in ensuring that plaintiff, who lived with her, received benefits.  [AR 24].  Standing alone, a

4  plaintiff's financial motivation for obtaining benefits is not a valid reason for discrediting the testimony of

5  plaintiff or family members.  See Ratto v. Sec'y, Dep't of Health & Human Servs., 839 F. Supp. 1415,

6  1428-1429 (D. Or. 1993) ("If the desire or expectation of obtaining benefits were by itself sufficient to

7  discredit a plaintiff's testimony, then no plaintiff (or their spouse, or friends, or family) would ever be found

8  credible.").   However, an ALJ does not have to ignore the possibility that financial concerns or a "close

9  relationship" with plaintiff influenced a lay witness's testimony.  Greger, 464 F.3d at 972.  The ALJ

10 permissibly considered plaintiff's mother's financial and familial interest in helping her son obtain benefits,

11 along with other factors, in evaluating the credibility of her statements.

12      The ALJ articulated germane reasons for finding the testimony of plaintiff's mother less than fully

13 credible.

14      **Credibility finding**

15      Plaintiff contends that the ALJ improperly assessed his subjective symptom testimony.  [JS 16,20].

16      If the record contains objective evidence of an underlying physical or mental impairment that is

17 reasonably likely to be the source of a claimant's subjective symptoms, the ALJ is required to consider all

18 subjective testimony as to the severity of the symptoms.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.

19 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a),

20 416.929(a) (explaining how pain and other symptoms are evaluated).   Absent affirmative evidence of

21 malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's

22 subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc.

23 Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008); Moisa, 367 F.3d at 885.  "In reaching a credibility

24 determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct,

25 daily activities, and work record, among other factors." Bray v. Comm'r of Social Sec. Admin., 554 F.3d

26 1219, 1221, 1227 (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997). The ALJ's

27 credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected

28 the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."

1    Moisa, 367 F.3d at 885.  If the ALJ's interpretation of the claimant's testimony is reasonable and is

2    supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261

3    F.3d 853, 857 (9th Cir. 2001).

4             In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented,"

5    including the following factors:  (1) the claimant's daily activities; (2) the location, duration, frequency, and

6    intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity,

7    and environmental conditions; (4) the type, dosage, effectiveness, and adverse side effects of any pain

8    medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other

9    measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the

10   claimant's functional restrictions due to such symptoms.  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3);

11   see also Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's

12   policy regarding the evaluation of pain and other symptoms).  The ALJ also may employ "ordinary

13   techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for

14   truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and

15   the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's

16   subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or

17   friends concerning the nature, severity, and effect of the claimant's symptoms.  See Light, 119 F.3d at 792;

18   Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

19           The ALJ provided clear and convincing reasons supporting his credibility finding. The ALJ  found

20   that plaintiff's daily activities did not support a finding that his subjective symptoms precluded him from

21   work requiring simple, repetitive tasks. [AR 24].  The ALJ  pointed to plaintiff's testimony that he could

22   lift 100 pounds, went to the store to shop, helped with household chores, and spent much of the day

23   watching television and playing video games. [AR 24, 37-38].  The ALJ permissibly concluded that some

24   of the physical and mental abilities and social interactions required to perform these activities are the same

25   as those necessary for performing work limited to simple, repetitive tasks.  [AR 23].  Plaintiff's admitted

26   ability to perform a fairly wide range of routine daily activities independently and without reporting

27   significant interference or ill-effects from his allegedly disabling symptoms was one factor, among others,

28   that justified the ALJ's credibility determination.  See Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir.

1   2012) (noting that even when a plaintiff's daily activities "suggest some difficulty functioning, they may

2   be grounds for discrediting plaintiff's testimony to the extent that they contradict claims of a totally

3   debilitating impairment"); Burch, 400 F.3d at 679 (holding that the ALJ did not err in finding that plaintiff's

4   ability to care for her own personal needs, cook, clean, shop, interact with family, and manage her finances

5   suggested that plaintiff "was quite functional" and undermined her credibility).

6         Plaintiff argues that the ALJ improperly discredited his testimony based on his daily activities

7   because he does not need to be "utterly incapacitated" to be disabled. [JS 18 (quoting Vertigan v. Halter,

8   260 F.3d 1044, 1049-1050 (9th Cir. 2001)]. A claimant "need not vegetate in a dark room in order to be

9   eligible for benefits"; nonetheless, "the ALJ may discredit a plaintiff's testimony when plaintiff reports

10  participation in everyday activities indicating capacities that are transferable to a work setting. Even where

11  those activities suggest some difficulty functioning, they may be grounds for discrediting plaintiff's

12  testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d

13  at 1112-1113 (internal quotation marks and citations omitted). The ALJ reasonably concluded that the

14  physical and mental capabilities required to perform plaintiff's daily activities undermine his subjective

15  allegations of total disability. [AR 24].

16        The ALJ also found that plaintiff's work history diminished his credibility. [AR 24]. The ALJ noted

17  that plaintiff said that he had stopped working at one job because he did not have transportation. [AR 24,

18  39]. Plaintiff also said that he stopped working at his other previous job because he did not want to work

19  anymore. [ AR 24, 39]. Both of these reasons are unrelated to plaintiff's medical condition. [AR 24]. A

20  claimant's prior work record and efforts to work may be considered in assessing credibility. See 20 C.F.R.

21  §§ 416.929(a), (c)(3) (stating that the Commissioner will consider a plaintiff's efforts to work and prior work

22  record in evaluating symptoms); SSR 96-7p, 1996 WL 374186, at *5 (stating that adjudicator may consider

23  "[s]tatements and reports from the individual and from treating or examining physicians or psychologists

24  and other persons about the individual's medical history, treatment and response, prior work record and

25  efforts to work, daily activities, and other information concerning the individual's symptoms and how the

26  symptoms affect the individual's ability to work"); Schaal v. Apfel, 134 F.3d 496, 502 (2nd Cir. 1998)

27  (explaining that a poor work history may be considered in evaluating a claimant's credibility).

28        The ALJ also permissibly concluded that the absence of medical evidence regarding any significant

11

1  physical problems or limitations is inconsistent with the alleged severity of plaintiff's physical functional

2  limitations. [AR 24].The ALJ is allowed to consider the lack of objective medical evidence corroborating

3  the alleged severity of plaintiff's subjective symptoms. See Burch, 400 F.3d at 681 ("Although lack of

4  medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can

5  consider in his credibility analysis.").  As to plaintiff's alleged mental symptoms, the ALJ pointed to the

6  medical evidence from Atascadero and his post-discharge medical records showing that his treatment had

7  been "generally successful in controlling those mental symptoms," as described more particularly above.

8   [AR 24-25].  The ALJ permissibly inferred that the objective medical evidence did not corroborate the

9  alleged severity of plaintiff's subjective complaints, but instead was consistent with an RFC for a full range

10  of work consisting of simple, repetitive tasks.

11      The ALJ articulated clear and convincing reasons, based on substantial evidence, for rejecting the

12  alleged severity of plaintiff's subjective complaints.

13  **Conclusion**

14      For the reasons stated above, the Commissioner's decision is supported by substantial evidence and

15  is free of reversible legal error.  Accordingly, the Commissioner's decision is **affirmed.**

16

17  June 29, 2015

18  _____

19  ANDREW J. WISTRICH
    United States Magistrate Judge

20

21

22

23

24

25

26

27

28